**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Solomon Sovero,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-18-02948-PHX-JGZ<br><br>**ORDER** |

Pending before the Court is Magistrate Judge Bruce G. Macdonald's Report and Recommendation recommending that the Court deny Petitioner David Sovero's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 31.) Petitioner filed an Objection to the Report and Recommendation, and Respondents filed a Response. (Docs. 37, 38.) Pursuant to the Court's order, Respondents also provided the transcript of Petitioner's November 23, 2010 change-of-plea proceeding. (Docs. 39, 40.) Having considered the Report and Recommendation, the parties' briefing on Petitioner's Petition (Docs. 10, 20), Petitioner's Objection (Doc. 31), and Respondents' Response (Doc. 38) and supplemental filing (Doc. 40), the Court will overrule Petitioner's Objection and adopt Judge Macdonald's recommendation to deny the Petition.

**I.     Background**

Petitioner was charged with two counts of first-degree murder, one count of burglary in the first degree, two counts of kidnapping, two counts of aggravated assault, and one count of burglary. (Doc. 20, p. 2.) Petitioner pled guilty in Arizona Superior Court to two

counts of first-degree murder and one count of aggravated assault and the remaining charges, including the possibility of the death penalty, were dismissed. (*Id.*) He was sentenced to a term of imprisonment for natural life on count one for first-degree murder; a term of imprisonment for natural life on count two (first-degree murder), consecutive to count one; and a term of 21 years of imprisonment on count six (aggravated assault) consecutive to count two. (Doc. 21, pp. 30-31.)

In the pending Petition for Writ of Habeas Corpus, Petitioner alleges in Ground 1 that the high dosages of psychotropic medications he was taking rendered him incompetent to knowingly and voluntary enter a guilty plea, in violation of his Fifth and Fourteenth Amendment rights. (Doc. 10, p. 6.) In Ground 2, Petitioner alleges that his trial counsel was ineffective because counsel: (a) knew Petitioner was impaired by psychotropic medication and allowed Petitioner to enter his plea "not knowingly or intelligently"; (b) failed to obtain *Brady* material from the county attorney; (c) failed to provide sufficient time to discuss strategies; (d) failed to investigate and interview witnesses; and (e) failed to obtain law enforcement "integrity files". (*Id.* at 9.)

The Magistrate Judge concluded that Grounds 1 and 2(e) were procedurally defaulted because Petitioner did not raise the claims in his post-conviction relief (PCR) petition. The Magistrate Judge concluded that Ground 2(a) was procedurally defaulted because Petitioner failed to raise it in his petition for appellate court review during the PCR proceedings. The Magistrate Judge further concluded that Ground 2(c) was procedurally defaulted because Petitioner did not raise it at all during PCR proceedings. The Magistrate Judge recommended denial of Grounds 2(b) and 2(d) on the merits. Petitioner objects to the Magistrate Judge's Report and Recommendation as to all Grounds except for 2(e). (Doc. 37.)

**II.  Standard of Review**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo if

objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Reyna-Tapia*, 328 F.3d at 1121.

### III. Applicable Legal Standards

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* at § 2254(d)(2).

A state-court decision is "contrary to" clearly established Federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from its precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). To satisfy this standard a state court need not cite Supreme Court cases or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

To find that a state court's factual determination is unreasonable under § 2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as discussed in Murray (Robert) v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id*.

Additionally, the Court cannot grant habeas relief under AEDPA if the petitioner failed to exhaust his claim in state court. 28 U.D.C. § 2254(b)(1)(A); *see O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 839 (1999).

**IV. Discussion**

    **A. Ground 1 is properly exhausted but fails on the merits**

In Ground 1, Petitioner claims that his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution were violated because he was impaired by psychotropic medications during the state criminal proceedings. (Doc. 10, p. 6.) Petitioner asserts that due to his medication, he did not knowingly and intelligently enter into his plea agreement and his due process rights were violated because the trial court failed to hold a competency hearing. (*Id.*) The Magistrate Judge concluded that Ground 1 was procedurally defaulted because Petitioner did not raise it in his PCR petition. Petitioner objects to this conclusion.[1]

    **1. Exhaustion of state remedies**

The Court concludes that Petitioner fairly presented the due process claim in Ground 1 in his PCR Petition and that the claim is exhausted. A petitioner fairly presents federal claims only if he alerted the state court that his claims rested on the federal Constitution. *Fields v. Waddington*, 401 F.3d 1018, 1020-21 (9th Cir. 2005) (citation omitted). "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Id.* (citations omitted).

In his PCR petition, Petitioner asserted he was raising a due process claim under the Fifth and Fourteenth Amendments, and claims of ineffective assistance of counsel under the Sixth Amendment, and that the issues raised involved "competency—due to impairment of heavy psychotropic drugs" and various instances of ineffectiveness of counsel. (Doc. 22, pp. 14-15.) In raising his due process claim, Petitioner stated that his plea was not voluntarily and intelligently made because he was taking high dosages of

---

[1] The Court disagrees with Respondents' contention that Petitioner "does not appear to object to the [Report and Recommendation's] . . . conclusions regarding Claim 1." (Doc. 38, p. 2.) Petitioner's Objection challenges the Magistrate Judge's conclusion that Ground 1 was not raised in the PCR petition, stating several times that the conclusion "is inaccurate" and providing several pages of argument in support of Petitioner's position that he properly presented the claim during PCR proceedings. (Doc. 37, pp. 3-13.)

psychotropic medication at the time.  (Doc. 22, pp. 17-28.)   Within this discussion, Petitioner cited *Pate v. Robinson*, 383 U.S. 375 (1966), which held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.   (*Id.* at 21.) Petitioner also cited other federal cases for the premise that a plea can be involuntary where the court did not make appropriate inquiry into a defendant's competency. (*Id*. at 17-18.)  The Court concludes that Petitioner's allegations along with his citation to *Pate* fairly presented a federal due process claim.

The Magistrate Judge concluded, and Respondents do not dispute, that Petitioner raised his due process claim in his petition for appellate court review.  (Doc. 20, p. 4; Doc. 31, p. 20.)  Thus, the claim was exhausted.  Notably, the appellate court addressed and rejected Petitioner's claim that his pleas were not knowing, intelligent and voluntary because he was taking psychotropic medication at the time.  (Doc. 23, p. 80.)  Thus, even if Petitioner had not fairly presented the claim in his PCR Petition, the claim would be exhausted.  A petitioner's state remedies are also exhausted when the state courts have reached and passed on the merits of a federal claim, regardless whether the petitioner had fairly presented the claim to the state court.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("It is reasonable to infer an exception [to the fair presentation requirement] where the State has actually passed upon the claim."); *see also Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002) ("Where a court has in fact ruled on a claim, there is no possibility of 'friction between the state and federal court systems' caused by "the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state court's having had an opportunity to correct the constitutional violation in the first instance.'") (quoting *O'Sullivan*, 526 U.S. at 845).

### 2. Merits of Claim

It is clearly established federal law that the conviction of an accused person while he is legally incompetent violates due process.  *Pate*, 383 U.S. at 378; *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *see also Maxwell v. Roe*, 606 F.3d 561, 576 (9th Cir. 2010)

(recognizing *Pate* and *Drope* as clearly established law). A defendant is "competent to plead guilty and stand trial if he had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'" *Deere v. Cullen*, 718 F.3d 1124, 1144 (9th Cir. 2013) (citing *Godinez v. Moran*, 509 U.S. 389, 396–98 (1993), *Drope*, 420 U.S. at 172, and *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)) (footnote omitted). "Competence 'has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel.'" *Id.* (quoting *Godinez*, 509 U.S. at 402). When analyzing competence to plead guilty, the court "look[s] to whether a defendant has the ability to make a reasoned choice among the alternatives presented to him." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (internal quotation marks and citation omitted). "Where the evidence before the trial court raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing." *Maxwell*, 606 F.3d at 568 (citing *Pate*, 383 U.S. at 385). "[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* (internal quotation marks and citation omitted). "Factors to consider in ascertaining a defendant's competence include evidence of his irrational behavior, his demeanor at trial, and any prior medical opinion on competence." *Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009) (citing *Drope*, 420 U.S. at 180). "[O]ne of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180.

Here, the PCR court found Petitioner's claim was without merit:

> No report or opinion is offered by a mental health professional to support his claim that he was not competent to enter a plea. To the contrary, Defendant said on the record that the prescribed medications helped him to understand the proceedings rather than impeding his mental competency. His counsel also commented on his personal observations that the medications "are helping him more."

(Doc. 22, p. 165.) On review of the PCR court's denial of Petitioner's claim, the Arizona

- 6 -

Court of Appeals similarly rejected the claim:

> Sovero claimed his pleas were not knowing, intelligent and voluntary because he was taking psychotropic medication under a doctor's care at the time. In pressing this argument, Sovero failed to present a colorable claim. Sovero offered nothing from a medical professional to explain the effects of any relevant medication in general or its effects on him specifically. Moreover, although he pled guilty in November 2010, the medical records he provides (which show that he was taking psychotropic medication at one time) end in May 2010, six months before the change-of-plea hearing.
>
> []While Sovero said at the November 2010 change-of-plea hearing that he was still taking medication for mental health issues, he did not identify the medications and did not complain of their effects, but explained to the court that the medications helped him think more clearly. Sovero then went through the full colloquy with the court and stated he understood all the terms of the plea agreement, including the full range of penalties. Nothing about that colloquy suggests his pleas were not knowing, intelligent and voluntary.

(Doc. 23, p. 80.) This Court concludes that the state court's decision denying Petitioner's Fourteenth Amendment due process claim[2] was not contrary to or an unreasonable application of clearly established Federal law. Nor was the state court's decision based on an unreasonable application of the facts.

Petitioner's federal habeas Petition and Objection essentially restate the arguments that Petitioner raised during the PCR proceedings. The Court rejects the arguments because Petitioner does not persuasively explain how the state court's decision was not in accordance with *Pate* and its progeny or otherwise contrary to federal law. And, evidence that Petitioner submitted in support of his claim is insufficient to raise a doubt as to his competency to enter a knowing, intelligent and voluntary plea or to cooperate rationally with counsel at the time he entered his guilty pleas, as reasonably found by the state court.

---

[2] Petitioner's claim of a due process violation under the Fifth Amendment is not cognizable. It is the Fourteenth Amendment, not the Fifth Amendment, that protects a person against deprivations of due process by a state. *See* U.S. Const. amend XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property without due process of law."); *Castillo v. McFadden*, 399 F.3d at 993, 1002 n. 5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). Because the Fifth Amendment Due Process Clause does not provide a cognizable ground for relief regarding Petitioner's state court conviction, his allegation that the Fifth Amendment Due Process Clause was violated will be dismissed.

To support his claim that his medication rendered him incompetent, Petitioner submitted a court minute entry, medical records, transcripts of court proceedings containing comments about his medication, and notes from mitigation specialist Herman Joseph. Many of these documents establish that Petitioner was taking psychotropic medications at various times during his incarceration.[3] The notes from mitigation specialist Joseph contain information from Petitioner's girlfriend, Shannon Sausa. The notes state that at some unspecified point, Petitioner told Joseph that Sausa mentioned she was concerned about how he looked and wanted to know what medications he was taking. (*Id*. at 104.) In May 24, 2010, Sausa wrote Joseph stating that she "wanted to see about changing [Petitioner's] meds. [H]e is turning into a zombie." (*Id*.) In November 2010, Petitioner told Joseph that Sausa was going to write to the court to advise that she did not think Petitioner "was 'competent' enough to have made the decision to have entered into his planned plea agreement." (*Id*.) Joseph's notes also reflect that in June 2010, Petitioner's former sister-in-law, French, told Joseph that when visiting Petitioner at the jail, she found him to be "lethargic, 'spacey' and noncommunitive. [sic]" (*Id*. at 104.) French described Petitioner's affect and behavior as entirely different from the person she had known prior to his incarceration. (*Id*.)[4]

Petitioner also argues that three occurrences during the change of plea hearing show that that he was incompetent at that time. First, after Petitioner was advised of the possible penalties and responded that he understood, Petitioner's counsel asked for a minute and an off-the-record conversation ensued between Petitioner and counsel. (*Id*. at 57-58.) Petitioner asserts that this exchange shows he was confused about the possible penalties

---

[3] Records from Maricopa County Correctional Health Services reflect that from October 2009 through May 2010, Petitioner received various medications including Vistaril, Thorazine, Risperdal, Cogentin, Trazodone, and Depakote. (Doc. 22, pp. 45-53.) An April 2010 email from Joseph to Petitioner's counsel relayed Petitioner's statement that he was receiving Depakote, Cogentin, Risperdal and Thorazine, and that jail staff wanted to evaluate him. (*Id*. at 107.)

[4] Petitioner also pointed to excerpts from his subsequent sentencing on January 11, 2011, where his former sister-in-law stated: "It saddens me to see [Petitioner] . . . today. It's like he's lifeless  I am concerned about him, your Honor. He has been heavily medicated [sic] that somedays he doesn't even respond to our questions." (Doc. 22, p. 65.)

and that his counsel had to stop the proceedings to explain them to him. (*Id.* at 22.) Second, Petitioner asserts the fact that his counsel provided the factual basis at the hearing shows that Petitioner did not have the capacity to do so. (*Id.* at 23.) Third, Petitioner asserts that the colloquy showed he was incompetent because he answered the court's question about the kind of medication he was taking with his own question and because it was defense counsel who actually answered the question. (*Id*. at 76-78.)[5]

The Court concludes, as the state court did, that the evidence does not establish that (or raise a bona fide doubt about whether) the medications Petitioner was taking, alone or in combination, altered his mental capacity to the degree that would render him unable to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. "The mere fact that [the defendant] . . . took potentially mood-altering medication is not sufficient to vitiate his plea. There must be some evidence that the medication affected his rationality." *United States v. Pellerito*, 878 F.2d 1535, 1542 (1st Cir. 1989). Here there is no evidence that the medication affected

---

[5] The relevant portion of the transcript reads:

| | |
|---|---|
| THE COURT: | Have you used any drugs, alcohol, or medication in the last 24 hours? |
| THE DEFENDANT: | Medication. |
| THE COURT: | All right. What kind of medication. |
| THE DEFENDANT: | What was the one? |
| [Defense counsel]: | He's on medications that help him with his mental health issues. |
| THE COURT: | All right. When did you take them? |
| [Defense counsel]: | This morning. |
| THE COURT: | This morning. All right. Do they help you to think better? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | You understand why we're here and what's going on today? |
| THE DEFENDANT: | Yes. |
| THE COURT: | All right. You've entered into a plea agreement here where you agree to plead guilty to—both Counts 1 and 2 are first degree murder, both class 1 dangerous felonies. Both occurred on February 4, 2009. And also Count 6, aggravated assault, a Class 2 dangerous felony. That occurred also—well, that occurred on February 5, 2009. Have you had a chance to go over this plea agreement with your attorneys? |
| THE DEFENDANT: | Yes. |

(Doc. 22, pp. 56-57.)

Petitioner's rationality. In fact, the record from the change of plea hearing shows the contrary.

The Petitioner told the state court at the hearing that the medications helped him to think more clearly; he also stated that he understood why he was in court that day and what was going on. (Doc. 40, p. 6.) Immediately prior to the exchange with the court about Petitioner's medication, Petitioner answered the court's questions concerning his true name, date of birth and education. (*Id.* at 2.) And throughout the proceeding, Petitioner appropriately responded to the court's inquiries. (*See* Doc. 40, pp. 4-17.)

The single off-the-record discussion between Petitioner and counsel does not support an inference that the conference was necessitated by Petitioner's confusion. Clients and their counsel often consult during hearings. The transcript shows that, after Petitioner was advised of the possible penalties and responded that he understood the possible penalties, defense counsel asked for a minute. (Doc. 40, p. 8.) There is no indication as to why counsel requested the conference. More importantly, nothing about Petitioner's statements, before or after the conference, suggest he was confused. There were no corrections made to the record, and after the off-the-record conversation occurred, the Court asked if they were ready to go, and Petitioner responded affirmatively. (*Id.* at 9.) Similarly, it is not uncommon for counsel to state the factual basis at a change of plea hearing. Counsel's providing the factual basis is not, in itself, evidence of Petitioner's incompetence.

Finally, the fact that Petitioner answered the court's question about the kind of medication he was taking with his own question, and defense counsel's subsequent response to the question, does not establish a concern about competency. (*Id.* at 76-78.) The court asked Petitioner whether he used any drugs, alcohol or medication in the last 24 hours. Petitioner appropriately responded to the Court's question by stating that he had taken medication. When asked by the court for the kind of medication, Petitioner turned to defense counsel and asked, "[w]hat was the one?" (*Id.* at 6.) It is clear from the context of the exchange that Petitioner did not recall the name of the medication and was seeking

defense counsel's assistance in identifying the medication. (Doc. 40, pp. 5-6.) Petitioner's response does not indicate a lack of competence. It showed his understanding of the question and his effort to obtain the information required to respond to the question.

The record of the change of plea hearing refutes Petitioner's argument that his medications compromised his competence. The transcript as a whole, Petitioner's own statements, including statements about the helpfulness of the medication, his ability to comprehend the significance of the hearing, and his ability to respond appropriately to the court's questions throughout the proceeding, strongly support the state court's rejection of Petitioner's argument that his medications compromised his competence. For the foregoing reasons, the Court concludes that the state court decision denying Petitioner's due process claim was not contrary to or an unreasonable application of clearly established Federal law.

**B.     Ground 2(a) is properly exhausted in part, but that part fails on the merits.**

In Ground 2(a), Petitioner asserts that trial counsel was ineffective because counsel allowed Petitioner to plead guilty and stand for sentencing knowing that Petitioner's psychotropic medication rendered him unable to enter a knowing and intelligent plea. (Doc. 10, p. 9)   The Magistrate Judge concluded that Ground 2(a) was procedurally defaulted because Petitioner did not fairly present his claim to the Arizona Court of Appeals, and Arizona law would now prohibit him from bringing his claim to the court of appeals.  (Doc. 31, pp. 22-23.)

The Court concludes that Petitioner exhausted his claim that trial counsel was ineffective for allowing Petitioner to plead guilty knowing that Petitioner's medications rendered him incompetent, but the claim fails on the merits. The Court further concludes that Petitioner failed to exhaust his claim that counsel was ineffective in allowing Petitioner to proceed with sentencing.

    **1.     Exhaustion of state remedies**
      a. <u>Claim of incompetency during guilty plea</u>

Respondents acknowledge that Petitioner's PCR Petition fairly presented the claim

that Petitioner's counsel was ineffective because counsel allowed Petitioner to plead guilty while Petitioner was on psychotropic medications that rendered Petitioner incompetent and his plea unknowing and unintelligent. (Doc. 20, p. 14.) Respondents argue, however, that Petitioner did not exhaust the claim because he failed to fairly present it to the appellate court on review. While the Court agrees with Respondents that Petitioner did not raise the claim in his petition for review, the Court disagrees that the claim is precluded due to the lack of exhaustion. In its decision, the Arizona Court of Appeals expressly addressed and rejected this claim. (Doc. 23, pp. 80-81.) The fact that the Arizona Court of Appeals decided the claim on the merits renders it exhausted. *See Castille*, 489 U.S. at 351 (it is reasonable to infer an exception to the fair presentment requirement where the state courts have reached and passed on the merits of a federal claim); *Sandgathe*, 314 F.3d at 377 (fact that state court expressly addressed petitioner's constitutional claim on the merits precludes any exhaustion defense at that level of decision).

b. Claim of incompetency during sentencing

Petitioner failed to fairly present his claim that his counsel was ineffective in allowing him to be sentenced while taking medications that rendered Petitioner incompetent. Review of the record reflects that Petitioner did not raise this claim before the state courts. "[E]ach unrelated alleged instance . . . of counsel's ineffectiveness is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (internal quotation marks and citation omitted) (alteration in original). Because Petitioner did not present this claim to the state court, and the state court did not have an opportunity to address it, the Court will adopt the Magistrate Judge's conclusion that Ground 2(a) is procedurally defaulted as to Petitioner's claim that counsel was ineffective at sentencing.

**2. Merits of Claim**

To merit relief from the state court, Petitioner "had to show both that his counsel provided deficient assistance and that there was prejudice as a result."[6] *Harrington v.*

---

[6] "Generally, in the context of a collateral attack on a guilty plea, *Strickland's* prejudice prong requires that the petitioner show that 'there is a reasonable probability that

*Richter*, 562 U.S. 86, 104 (2011); *see also Strickland v. Washington*, 466 U.S. 668 (1984). Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700.

Additionally, under the AEDPA, the federal court's review of the state court's decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689–699 (2002). In order to obtain habeas relief, Petitioner must make the additional showing that the state court's ruling rejecting an ineffective assistance of counsel claim constituted an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1); *see also Harrington*, 562 U.S. at 105 (Under § 2254(d) "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

To establish counsel's ineffectiveness before the PCR court, Petitioner relied on essentially the same evidence he presented in support of his due process claim. Petitioner argued in his PCR petition that the evidence showed that Petitioner's attorney knew that Petitioner's medication rendered him incompetent to enter a plea. Petitioner also asserted:

> Counsel knew what effect these medications took on the defendant this is why counsel repeatedly had to instruct the defendant to [sic] what to say throughout the proceeding. Yes, no and I understand. Is what (counsel) Mr. Koestner would instruct me to say and when to say it throughout the

---

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Sherwood v. Neotti*, No. EDCV 11-11728-CJC-PLA, 2020 WL 2572459, at *3 (C.D. Cal. May 21, 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985)). However, in analyzing the prejudice prong where the petitioner claimed counsel was ineffective by failing to request a competency hearing and allowing the petitioner to enter a guilty plea, the Ninth Circuit has framed the test as whether there was "a reasonable probability that [the petitioner] . . . would have been found incompetent to plead guilty[.]" *Deere v. Cullen*, 718 F.3d 1124, 1126 (9th Cir. 2013). As one court has noted, "a claim of incompetence is difficult to analyze under the 'outcome' test in *Strickland*, because whether the defendant was guilty or innocent is irrelevant if he was convicted while incompetent." *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (stating that the petitioner "can succeed in establishing that he was prejudiced by his attorney's failure to investigate [petitioner's competence] only if he can demonstrate by a reasonable probability that he was incompetent to plead guilty."). The Court need not resolve which test applies to Petitioner's claim. As discussed, *infra*, Petition fails to satisfy the first *Strickland* prong —deficient performance. Additionally, Petitioner fails to demonstrate prejudice under either test.

> proceeding to accomplish counsel's task at hand and that goal was for Mr. Koestner (counsel) to get defendant to complete his plea agreement at all cost even if it was going to violate is clients [sic] constitutional rights.

(Doc. 22, pp. 24-25 (emphasis omitted).)

Following its discussion rejecting Petitioner's claim that his medications rendered him incompetent to plead guilty, the PCR court stated that Petitioner's "ineffective assistance of counsel claim is likewise without factual merit and does not present a colorable claim. This claim must be supported by more than mere speculation." (Doc. 22, p. 165.) On review, the Arizona Court of Appeals also rejected Petitioner's claim. The court concluded that Petitioner's failure to present a colorable claim that his pleas were not knowing, intelligent and voluntary because he was taking medications, also rendered him unable to "to present a colorable claim of ineffective assistance of counsel based on the failure to raise the issue at the change-of-plea hearing." (Doc. 23, p. 81.)

Considering Petitioner's claim of ineffective assistance of counsel under the applicable standards, the Court concludes that the state court's decision is not contrary to or an unreasonable application of clearly established federal law. Nor is the state court's decision based on an unreasonable determination of the facts in light of the evidence presented during the state proceeding. Petitioner fails to identify any evidence that suggests his counsel should have been aware that Petitioner's medicated state rendered him unable to knowingly, voluntarily and intelligently enter a guilty plea. As discussed *supra* concerning Ground 1, although counsel knew that Petitioner was taking medication for his mental health issues when Petitioner pleaded guilty, Petitioner stated that the medication helped him to think more clearly, and nothing in the record supports the conclusion that Petitioner was confused or that such confusion was caused by the medication. (*See* Doc. 40, pp. 4-17.) Petitioner's failure to raise a colorable claim that there was a bona fide doubt as to his competency to enter a plea, also supports the conclusion that counsel was not ineffective in failing to raise a competency issue. An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be

deficient performance"); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") Because Petitioner has failed to establish a reasonable probability that he was incompetent, Petitioner also cannot establish that he suffered any prejudice.

### C. Grounds 2(b) and 2(d) lack merit.

Petitioner's Objection concerning Grounds 2(b) and 2(d) raises essentially the same arguments Petitioner presented to Magistrate Judge Macdonald. Petitioner's Objection does not undermine the analysis and proper conclusion set forth in the Report and Recommendation. Therefore, the Court will overrule Petitioner's Objection and adopt the Report and Recommendation concerning Grounds 2(b) and 2(d).

### D. Ground 2(c) is procedurally defaulted

In Ground 2(c), Petitioner asserts that his trial counsel "failed to provide sufficient time to discuss defense strategies as this case was a capital offense." (Doc. 10, p. 9.) The Magistrate Judge concluded that claim 2(c) was procedurally defaulted because Petitioner failed to raise it before the state court and Petitioner would now be precluded from returning to state court to present the claim. (Doc. 31, pp. 28-31.) Petitioner challenges the Magistrate Judge's conclusion, arguing that the Magistrate Judge relied on a technicality and failed to liberally construe pro se filings. (Doc. 37, p. 22.) Petitioner asserts that he alleged in the PCR proceeding that his counsel did not spend enough time preparing for a complex capital case. (*Id.* at 21; *see also* Doc. 22, pp. 28-31; Doc. 23, pp. 36-37.) The Court agrees with the Magistrate Judge that claim 2(c) is procedurally defaulted.

As stated *supra*, "each unrelated alleged instance . . . of counsel's ineffectiveness is a separate claim for purposes of exhaustion." *Gulbrandson,* 738 F.3d at 992 (internal quotation marks and citation omitted). "[I]neffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to an ineffective assistance claim." *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007); *see also Gulbrandson*, 738 F.3d at 992 (explaining that a petitioner who

presented any ineffective assistance of counsel claim below cannot later add unrelated alleged instances of counsel's ineffectiveness to that claim).  Petitioner's complaint during the PCR proceeding that counsel did not spend enough time during the course of nearly one year preparing for Petitioner's case is factually distinct from a claim that counsel did not provide sufficient time to actually discuss defense strategies with Petitioner.  Because Petitioner did not fairly present Ground 2(c) to the state court, the claim is procedurally defaulted, and the Court will adopt the Report and Recommendation's conclusion that this claim is procedurally defaulted.

### E. Ground 2(e) is procedurally defaulted

Petitioner does not challenge the Magistrate Judge's conclusion that Ground 2(e) is procedurally defaulted.  Review of the record supports the Magistrate Judge's conclusion. The Court will adopt the Report and Recommendation's conclusion as to this claim.

### F. Denial of certificate of appealability

Before Petitioner can appeal this Court's judgment, a certificate of appealability (COA) must issue.  See 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2254 Cases.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) of the Rules Governing Section 2254 Cases.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  The court must indicate which specific issues satisfy this showing. See 28 U.S.C. §2253(c)(3).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct.  *Id*.  Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue, //

as the resolution of the petition is not debatable among reasonable jurists.

## IV. Conclusion

IT IS ORDERED:

1. The Report and Recommendation (Doc. 31) to deny the Petition is ADOPTED.

2. Petitioner's Objection to the Report and Recommendation (Doc. 37) is OVERRULED.

3. Petitioner's Petition for Writ of Habeas Corpus (Doc. 10) is DENIED.

4. A certificate of appealability is DENIED.

5. The Clerk of the Court shall enter judgment accordingly and close the file in this matter.

Dated this 20th day of July, 2021.

_____
Honorable Jennifer G. Zipps
United States District Judge